IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DANG SEAN,

                Plaintiff,

    vs.                                                                 Case No. 21-3212-SAC

DAN SCHNURR, JOHN MARKUS,
JORDAN BELL, CHRISTOPHER
MCLAIN, DEVIN CARPENTER,
and MICHAEL NICKELS,

                Defendants.

MEMORANDUM AND ORDER

The plaintiff Dang Sean ("Sean") *pro se* is hereby required to show good cause, in writing, to the Honorable Sam A. Crow, United States District Court Judge, why this action should not be dismissed due to the deficiencies in the plaintiff's complaint as discussed herein.

**Nature of Suit and the Plaintiff's Allegations**

Sean brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 alleging his constitutional rights under the First, Fifth, Eighth and Fourteenth Amendments were violated by the defendants engaging in "retaliatory behavior towards" him. ECF# 1, pp. 1-2. In relief, Sean seeks to be released from long term restrictive housing ("LTRH"), to have his prison file expunged of all reasons given for his LTRH, to have the defendants resign, to have his court filing fees reimbursed, and to be awarded punitive damages of $20,000. ECF# 1, p. 5. Sean completed the form civil rights complaint but mainly relied on a seven-page narrative that is replete with allegations untethered to specific claims and theories of relief.

1

Sean alleges that during a target search of his cell on October 4, 2020, a contraband cell phone was seized. He attaches a copy of the Administrative Segregation Report showing a pre-segregation hearing was conducted and he was placed in the RHU ("restricted housing unit") on October 4, 2020, "on OSR ["other security risk"] status for being in in possession of a contraband cell phone and being involved in an introduction of contraband case." ECF# 1-1, p. 9. Sean alleges that at a subsequent hearing on October 6, 2020, he pleaded to the contraband charges and received "45 days suspended, 60 days restriction, and $10 fine," but that he has remained in RHU under OSR status. ECF# 1, p. 6. Sean further alleges that on October 9, 2020, he refused the request of Enforcement, Apprehension and Investigation ("EHI") agent McLain to speak with the Segregation Review Board out of personal concern over how other inmates could perceive his behavior. EHI Agent McLain then told Sean, "you'll reman in segregation for 5 years." ECF# 1, p. 6. John Markus is alleged to be the EHI supervisor.

Sean was taken to Unit Team Manager ("UTM") Jordan Bell's office later that same day. There he spoke by telephone with EHI Agent Michael Nickles who said that EHI Agent McLain and EHI Agent Carpenter were present with him and that they had information indicating the plaintiff knew where other contraband cell phones and K2 were being hidden in the facility.  Sean was asked to help them and was promised a facility transfer. Sean refused the offer. He alleges the defendants then violated his constitutional rights by putting him in administrative segregation under investigation on OSR and by keeping him there for months because he refused to cooperate by becoming an informant.

Unlike other inmates under OSR status, Sean alleges he has been denied phone, contact, and video visits. He has lost access to electronic television and canteen privileges, has been denied personal clothes, and has been allowed only limited access to the courts and quarterly review of his administrative segregation.

Sean's complaint indicates he has pursued numerous grievance proceedings over his stay in administrative segregation or RHU. He complains about receiving contradictory responses from staff over whether he is under investigation. He asserts that the facility's internal policies and procedures for administrative segregation pending an investigation were not followed in violation of his due process rights. He argues that his grievance proceedings are no substitute for the procedures required by the facility's internal policies. He complains that Warden Schnurr failed to review and justify his administrative segregation in writing as required by the internal policies in violation of his due process rights.

Sean alleges that in retaliation for his refusal to be an informant, the EHI has falsified his prison records to justify his administrative segregation by trying to connect him to other contraband seizures in the past. While referring generally to what information has been shared during his administrative segregation review hearings, the plaintiff does not allege how the information is false or what is the fabricated entry.

The court's screening is complicated by the plaintiff's failure to present his factual allegations in an organized manner. He provides a running narrative that is not broken down by paragraphs and lacks any apparent organizational structure. The plaintiff intersperses his narrative with occasional conclusions about constitutional

3

violations. In response to this show cause order, the plaintiff will be expected to submit an amended complaint specifying which allegations are common to all counts and which are the key supporting factual allegations specific to each count.

**Statutory Screening of Prisoner Complaints**

A court must screen prisoners' complaints which seek relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The screening court must dismiss the entire complaint or any part of it that, "is frivolous, malicious, or fails to state a claim upon which relief can be granted; or . . . seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). In addressing a claim brought under § 1983, the analysis begins by identifying the specific constitutional right allegedly infringed. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989). The validity of the claim then must be judged by reference to the specific constitutional standard which governs that right. *Id*.

A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand,

"when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

The same standard used for Fed. R. Civ. P. 12(b)(6) motions is used for § 1915 dismissals, and this includes the newer language and meaning taken from *Twombly* and its "plausibility" determination. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009), *cert. denied*, 558 U.S. 1148 (2010). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). The Tenth Circuit has made clear, "that, to state a claim in federal court, a complaint must explain what each defendant did to [the pro se plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents, at Arapahoe County Justice Center*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

**Discussion**

The court finds the plaintiff's complaint subject to dismissal for the following reasons.

First, the complaint fails to identify any personal participation by defendants Markus and Carpenter. A plaintiff in an action under § 1983 must show the personal participation of each defendant, and bare allegations are insufficient to meet this showing. *See Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997)("Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation."). There are no allegations showing Carpenter's personal participation in the decisions made or actions taken allegedly in violation of the plaintiff's constitutional rights. As for the defendant Markus, an individual cannot be held liable under § 1983 on the basis of supervisory status. *Duffield v. Jackson*, 545 F.3d 1234, 1239 (10th Cir. 2008). Rather, to present a claim against a governmental official for conduct related to supervisory authority, a plaintiff must show "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds v. Richardson*, 614 F.3d 1185, 1198 (10th Cir. 2010)(quoting *Ashcroft v. Iqbal*, 556 U.S. at 677), *cert. denied*, 563 U.S. 960 (2011). Therefore, the defendants Markus and Carpenter are subject to dismissal from this action.

<u>Count One—First Amendment</u>

The plaintiff appears to be alleging that the EHI defendants retaliated by putting him in extended administrative segregation and falsifying his prison file because he refused to serve as an informant. There are three components to a retaliation claim under the First Amendment, namely, "(1) that the plaintiff was

6

engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." *Shero v. City of Grove, Okl.*, 510 F.3d 1196, 1203 (10th Cir. 2007). The plaintiff also must present facts showing that "but for the retaliatory motive," the actions "would not have taken place." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998). "[A]n inmate claiming retaliation must allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." *Id*. "[I]t is imperative that plaintiff's pleading be factual and not conclusory. Mere allegations of constitutional retaliation will not suffice." *Frazier v. Dubois*, 922 F.2d 560, 562 n.1 (10th Cir. 1990).

The plaintiff's complaint is less than clear in alleging what he knows to be false in his prison file, who supposedly fabricated the false information, and what constitutes the basis for his allegation. For example, Sean alleges that during his June 2021 administrative segregation review, he learned his LTRH was related to him having $15,000 "put" into his prison account and to his involvement in the 2018 confiscation of contraband worth $106,425. ECF# 1, p. 10. While he generally alleges his file was fabricated, he does not deny having $15,000 in his account. Instead, he alleges such an amount of money could have been earned while incarcerated without engaging in any illegal activities. As for the 2018 seizure, Sean denies he was the liaison during the callout in 2018 which led to this confiscation. This particularized denial is not connected to what information allegedly appears in his prison file about

which he was told. For that matter, his specific denial does not address whether he participated in the callout or was connected to the confiscated contraband. Instead, he simply questions why EHI did not take disciplinary measures earlier than now. Sean's speculative assertions and narrowly crafted denials are not allegations of facts that point to the EHI's fabrication of his prison file in retaliation of his refusal to cooperate.

The plaintiff's complaint is most deficient in failing to allege facts showing that but for the EHI agents' retaliatory motive, he would not still be in administrative segregation for having a contraband cellphone and for being involved in an introduction of contraband case. Indeed, the plaintiff's complaint does not deny or otherwise refute EHI agents had received information that he had knowledge about more contraband and had evidence indicating his ongoing involvement with the introduction of contraband. As the Administrative Segregation Report and Warden Schnurr's letter of review confirm without question, Sean was in RHU for the safety and security of the facility based on his possession of a contraband cell phone and on his involvement in a introduction of a contraband case. The plaintiff's complaint fails to present facts showing these circumstances would not have resulted in his RHU for the safety and security of the facility. Nor has the plaintiff pleaded sufficient facts showing what adverse action was particularly taken by each defendant that resulted in his administrative segregation and how those adverse actions were "'substantially motivated as a response'" to his failure to cooperate with EHI. *Guy v. Lampert*, 748 Fed. Appx. 178, 180 (10th Cir. 2018) (quoting *Shero v. City of Grove*, 510 F.3d at

1203). The plaintiff must allege specific facts showing retaliation to avoid dismissal of this count.

In such cases, courts "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). Prison officials are entitled to "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). However, "[o]nly when a prison administrator's actions are taken in bad faith and for no legitimate purpose are they not insulated from our review." *Silverstein v. Fed. Bureau of Prisons*, 559 Fed. Appx. 739, 754–55 (10th Cir. 2014) (citing *see Whitley v. Albers*, 475 U.S. 312, 322 (1986)).

Count Two—Eighth Amendment

The plaintiff appears to allege summarily that his extended stay in RHU violates his Eighth Amendment. Claims that segregation is cruel and unusual punishment have been rejected generally, because "the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). "To the extent that such conditions are restrictive and even harsh," but not cruel and unusual, "they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). For that reason, "administrative segregation is the sort of

confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt*, 459 U.S. at 468. *See also Penrod v. Zavaras*, 94 F.3d 1399, 1407 (10th Cir. 1996).

An Eighth Amendment claim may be brought when the specific conditions of a prison's administrative segregation unit could be considered cruel and unusual. Such conditions of confinement must: 1) be grossly disproportionate to the severity of the crime warranting punishment, 2) involve the wanton and unnecessary infliction of pain, or 3) deprive an inmate of the minimal civilized measure of life's necessities. *See Rhodes*, 452 U.S. at 346–47. Under the Eighth Amendment, prisons are required "to provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety." *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998); *see also Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008).

To assert a claim for constitutionally inadequate conditions, the inmate "must allege and prove an objective component and subjective component associated with the deficiency." *Shannon v. Graves*, 257 F.3d 1164, 1168 (10th Cir. 2001). The Eighth Amendment standard requires a plaintiff to satisfy both an objective component (a sufficiently serious deprivation) and a subjective component (deliberate indifference on the part of the official responsible). *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998). "The objective component requires conditions sufficiently serious so as to 'deprive inmates of the minimal civilized measure of life's necessities.'" *Id*. (quoting *Rhodes*, 452 U.S. at 347). As for the subjective component,

10

the plaintiff must allege the official had a sufficiently culpable state of mind. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). This means alleging the official "knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006).

Sean's list of alleged deprivations are not conditions sufficiently serious as to deprive him of the minimal civilized measure of life's necessities or subject him to a substantial risk of serious harm. Instead, the deprivations fall within those inherent restrictions expected with typical restricted housing status. *See United States v. Barefield*, 2009 WL 4015613, at *2 (D. Kan. Nov. 19, 2009). Nor does the complaint allege deprivations or circumstances suggesting that any defendant acted with deliberate indifference to his health or safety. Therefore, the plaintiff's Eighth Amendment count is subject to dismissal.

Fourteenth Amendment Claims

In his narrative, Sean alleges that he was being held in administrative segregation due to a pending investigation and that the defendants did not follow internal policy and procedure, specifically I.M.P.P. 20-104, as he was not charged or released within three days and the warden did not promptly approve in writing any justification for his extended stay in administrative segregation. Sean summarily equates this alleged policy violation to the violation of his due process rights.

The attached exhibits to the plaintiff's complaint fail to show that I.M.P.P. 20-104 was applicable, because he was not placed and kept in administrative segregation pending investigation. In responding to Sean's grievance on this point,

Warden Schnurr explains that his administrative segregation report shows he's there for the safety and security of the facility and not because he is under investigation. ECF# 1-1, p. 5. The letter adds, "EAI may be investigating in some of your actions, but you are in Restrictive Housing for the safety and security of the facility." *Id*. Wanting procedural rights under an internal policy that has not even been shown to be applicable is hardly the basis for a viable due process claim. Apart from the procedures in this internal policy, Sean fails to allege how his initial placement in administrative segregation violated his due process rights or how his continuing administrative segregation is in violation of the same. Sean appears to allege that he has been treated unequally in receiving administrative segregation for possession of contraband.

"Equal protection is essentially a direction that all persons similarly situated should be treated alike." *Fogle v. Pierson*, 435 F.3d 1252, 1260 (10th Cir. 2006) (internal quotation marks and citation omitted). The plaintiff's allegations fail to show he is similarly situated as his administrative segregation is not just for possessing contraband but for his involvement in the introduction of contraband and the risk he poses to the safety and security of the facility. His complaint is replete with allegations showing the defendants have evidence and reason to believe Sean ihas been engaged in the ongoing introduction of contradiction. For that matter, Sean has not alleged how this different treatment is not "reasonably related to legitimate penological interests." *Fogle*, 435 F.3d at 1261 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). Any equal protection claim the plaintiff is attempting to pursue fails to

12

allege facts showing the essential elements for this claim. Such a claim is subject to dismissal.

For a violation of due process claim under the Fourteenth Amendment, the plaintiff needs to show (1) that he has a constitutionally protected liberty interest in avoiding placement in administrative segregation, and (2) that the procedures used to place and maintain him in administrative segregation did not satisfy constitutional requirements. *See Wilkinson v. Austin*, 545 U.S. 209, 224 (2005); *Kentucky Dept. of Cor. v. Thompson*, 490 U.S. 454, 460 (1989). The plaintiff has failed to allege the deprivation of a constitutionally protected liberty interest. "A protected liberty interest only arises from a transfer to harsher conditions of confinement when an inmate faces an 'atypical and significant hardship in relation to the ordinary incidents of prison life.'" *Rezaq v. Nalley*, 677 F.3d 1001, 1011 (10th Cir. 2012) (quoting *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005) (internal quotations omitted)). The common four factors considered in determining whether segregation results in such a hardship are: "whether (1) the segregation relates to and furthers a legitimate penological interest, such as safety or rehabilitation; (2) the conditions of placement are extreme; (3) the placement increases the duration of confinement . . . ; and (4) the placement is indeterminate." *Estate of DiMarco v. Wyo. Dept. of Corrections*, 473 F.3d 1334, 1342 (10th Cir. 2007).

The plaintiff's allegations and exhibits indicate his placement in segregation was due to the seizure of contraband from his cell and to the ongoing risk he posed to the safety and security of the facility by the introduction of contraband. Thus, his segregation seems reasonably related to and in furtherance of a legitimate

penological interest. There are no allegations here showing his administrative segregation conditions to be extreme or his placement in segregation to increase the duration of his confinement. Finally, while alleging his placement is unnecessary and long, the plaintiff has not alleged facts demonstrating his placement to be indeterminate and not otherwise subject to regular periodic review. The plaintiff's complaint does not challenge the circumstances of his prehearing disciplinary detention hearing for this court to apply the *DiMarco* factors. The plaintiff's due process claim is subject to dismissal.

**Response Required**

For the above-stated reasons, the plaintiff's complaint appears to fail to state a claim for relief and, therefore, is subject to dismissal. The plaintiff is hereby ordered to show cause by November 22, 2021, why his complaint should not be dismissed for failure to state a claim or, in the alternative, file an amended complaint which cures all the pleading deficiencies discussed above.  If the plaintiff does not respond within the prescribed time, this matter may be dismissed without further notice.

IT IS THEREFORE ORDERED that the plaintiff is granted until November 22, 2021, to file either a memorandum showing good cause why this case should not be dismissed for each reason discussed above or an amended complaint curing all the pleading deficiencies discussed above.

Dated this 21st day of October, 2021, Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge