IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DANG SEAN,

                Plaintiff,

     vs.                                      Case No. 21-3212-SAC

DAN SCHNURR,

                Defendant.

MEMORANDUM AND ORDER

        The plaintiff Dang Sean ("Sean") *pro se* is presently an inmate at Lansing Correctional Facility ("Lansing") and appears to have been incarcerated there since he filed his original complaint on September 8, 2021. His amended complaint clarifies his relief is for actions taken against him while at Hutchinson Correctional Facility ("HCF") that allegedly resulted in his transfer to Lansing.

        The court issued a screening order on October 21, 2021, directing the plaintiff to show cause why his claims should not be dismissed or to file an amended complaint that cured all noted pleading deficiencies. ECF# 3. The plaintiff filed an amended complaint on November 12, 2021. ECF# 4. The amended complaint names one defendant, HCF Warden Dan Schnurr, and consists of two counts. The first count asserts a First Amendment violation from being transferred to Lansing and placed in Long Term Restricted Housing ("LTRH") in retaliation for having filed grievances that stated he was wrongly held in administrative segregation at HCF while under investigation. The second count asserts his due process rights were violated in that his "file for placement in LTRH" includes information that he alleges is false and that he was punished with LTRH without being afforded an opportunity to challenge this

1

information. For relief, Sean seeks release from LTRH, the false information expunged

from his file, staff members investigated, and $20,000 in punitive damages.

Sean's amended complaint replaces and moots the previously filed

original complaint. The amended complaint now must be screened by the Court

pursuant to 28 U.S.C. § 1915A(a) using the same screening standards set out in the

court's prior show cause order. This includes dismissing the amended complaint or any

portion thereof if the plaintiff has raised claims that are legally frivolous or malicious,

that fail to state a claim upon which relief may be granted, or that seek monetary

relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

After reviewing Plaintiff's amended complaint with those standards in mind, the Court

finds that the amended complaint is subject to summary dismissal under 28 U.S.C. §

1915A(b).

**Count One—First Amendment**

A search of Sean's cell yielded a contraband cell phone and resulted in

his placement in segregation. At the hearing on October 6, 2020, Sean pleaded to this

violation and apparently received 45 days suspended, 60 days restrictions, and a

$10.00 fine. Sean was not released from administrative segregation and was told at

segregation review on October 9, 2020, that he would remain there for

"investigation" into "introduction of contraband." ECF# 4, p. 4. Sean alleges he did

not cooperate with Enforcement, Apprehension, and Investigation ("EHI") agents and

was threatened with segregation if he did not cooperate. Sean filed grievances

challenging his placement in administrative segregation and received responses

indicating he was under investigation for contraband. Sean argued he could only be

held in segregation for three days pending investigation pursuant to I.M.P.P. 20-104.

His grievance over the alleged violation of I.M.P.P. 20-104 eventually reached Warden

Schnurr who denied it. In prior filings, Sean attached a copy of Warden Schnurr's

written decision dated February 9, 2021:

> FINDING OF FACTS:  In your grievance, you claim that per IMPP 20-104 you shall
> be charged or released with 3 working days until continued holding in
> Administrative Segregation is justified.
> CONCLUSIONS MADE:  I have reviewed your grievance and UTM Bell's response.
> I agree with his response. Your placement in Restrictive Housing can be
> explained to you in the attached Administrative Segregation Report #81152 for
> the safety and security of the facility for being in possession of a contraband
> cell phone and being involved in an introduction of contraband case on OSR
> status (other security risk). It does not state you are under investigation. EAI
> may be investigating in some of your actions, but you are in Restrictive Housing
> for the safety and security of the facility.
> ACTION TAKEN:  None warranted. Again, this will be my final answer to you on
> this matter. Any subsequent grievances received from you concerning this
> subject will be returned to you with no further response. You may appeal this
> decision to the Secretary of Corrections in accordance with applicable
> regulations that may be found in your Inmate Rule Book.

ECF# 1-1, p. 5. Sean also originally submitted Unit Team Manager Bell's response of

February 3, 2021, referenced in Warden Schnurr's decision:

> CONCLUSIONS MADE:  As UTS Pettijohn has explained, placement in Restrictive
> Housing is not a grievable issue. KAR 44-15-101a provides that the grievance
> procedure shall not be used in any way as substitute for, or as part of, the
> inmate disciplinary procedure, the **classification decision-making process**, or
> the property loss or personal injury claims procedure, or the procedure for
> censorship of publications specified in the secretary's internal management
> policy and procedure.
> You are currently on OSR status for the safety and security of the facility due
> to the introduction of contraband. This is noted in the attached Administrative
> Segregation Report dated October 5, 2020.
> *Offender Sean, Dang #109778 will be placed in RHU on OSR stats for being in
> possession of a contraband cell phone and being involved in an introduction of
> contraband case.*
> You have had the opportunity to speak to the Segregation Review Board (8)
> times since your placement in Restrictive Housing and have attended once
> (October 9, 2020) to discuss your RHU placement. I would encourage you to

attend Segregation Review Board at your next scheduled time to discuss your placement.

ECF# 1-1, p. 10 (bolding and italics in original).  Sean was transferred to Lansing and placed in LTRH on April 28, 2021. Sean alleges his transfer to Lansing's LTRH was in retaliation for his grievances.

As set out in the order to show cause, the plaintiff must allege facts showing that "but for the retaliatory motive," the actions "would not have taken place." *Peterson v Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998). Sean "must allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." *Id.* "[I]t is imperative that plaintiff's pleading be factual and not conclusory. Mere allegations of constitutional retaliation will not suffice." *Frazier v. Dubois*, 922 F.2d 560, 562 n. 1 (10th Cir. 1990). The plaintiff alleges no facts pointing to Warden Schnurr being motivated to transfer him to Lansing's LTRH because of his grievance over the application of I.M.P.P. 20-104. Instead, the exhibits of record here show his grievances were timely denied with supporting documentation and reasonably decided as inappropriate for seeking review of disciplinary matters and as having no factual basis. His transfer to Lansing occurred more than 11 weeks after Warden Schnurr's denial of his grievance. The plaintiff alleges nothing about the circumstances of the grievance process or about his transfer to Lansing that would support an arguable inference of a retaliatory motive or a plausible claim of retaliation. *Strope v. Cummings*, 381 Fed. Appx. 878, 884 (10th Cir. 2010) (A plaintiff inmate has "the rigorous burden  . . . to show not only that a retaliatory motive may have played some role in his transfer but that such a motive was the strict but-for cause of his transfer.").  His allegation of "personal belief that he is the victim of

retaliation" is not enough. *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999) (citation omitted) ("Mere conclusory allegations of retaliation will not be enough to withstand" dismissal." (citation omitted)). The court discussed this pleading deficiency in its show cause order. Having failed to include sufficient specific facts to state a retaliation claim, the plaintiff may not proceed with his First Amendment count which is dismissed for failure to state a claim upon which relief may be granted.

**Count Two—Due Process.**

Sean alleges that on June 1, 2021, at his first segregation review in LTRH at Lansing, he learned his "file for his placement in LTRH" included the following, that $15,000 had been deposited in his prison account and that he "was liaison of the Buddhist callout in 2018 when $106,425 worth of contraband confiscated." ECF# 4, p. 5. He alleges a denial of due process in being disciplined for these "accusations without having a chance to challenge them." *Id.* Sean denies being the liaison and denies ever having $15,000 in his account and asserts these false accusations were put in his file to justify LTRH placement. Sean alleges the defendant Schnurr is "at fault" in allowing these false documents to be included in his file and in not conducting an adequate investigation before signing off on his LTRH. *Id.*

The Tenth Circuit has made clear, "that, to state a claim in federal court, a complaint must explain what each defendant did to [the pro se plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents, at Arapahoe County Justice Center*, 492 F.3d 1158,

1163 (10th Cir. 2007). To present a claim against a governmental official for conduct related to supervisory authority, a plaintiff must show "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds v. Richardson*, 614 F.3d 1185, 1198 (10th Cir. 2010) (quotation marks and citation omitted).

   The plaintiff's complaint fails to state an actionable claim against HCF Warden Schnurr for a due process violation. Sean bases his claim on what he learned was in his prison file as of June of 2021 when he was already in the Lansing LTRH. He does not allege the denial of any procedural due process rights in the segregation review proceedings or in any related disciplinary proceedings at HCF. He does not identify any HCF policy or procedure involved in the denial of his due process rights. He does not allege any facts showing a plausible claim that Schnurr placed this information in his file, that Schnurr was responsible for any policy or procedure allowing for the alleged falsification of information, or that Schnurr deliberately and consciously failed to act in the face of an obvious risk of a constitutional harm with an almost inevitable constitutional injury to the plaintiff. *See Smith v. Trapp*, 2016 WL 7188290, at *4 (D. Kan. Dec. 12, 2016). The plaintiff has failed to allege a plausible claim for relief against Warden Schnurr for a due process violation.

   Moreover, to state a plausible due process claim under the Fourteenth Amendment, the plaintiff must come forward with specific allegations showing, (1) that he has a constitutionally protected liberty interest in avoiding placement in

administrative segregation, and (2) that the procedures used to place and maintain him in administrative segregation did not satisfy constitutional requirements. *See Wilkinson v. Austin*, 545 U.S. 209, 224 (2005); *Kentucky Dept. of Cor. v. Thompson*, 490 U.S. 454, 460 (1989). The plaintiff has failed to allege the deprivation of a constitutionally protected liberty interest.

"A protected liberty interest only arises from a transfer to harsher conditions of confinement when an inmate faces an 'atypical and significant hardship in relation to the ordinary incidents of prison life.'" *Rezaq v. Nalley*, 677 F.3d 1001, 1011 (10th Cir. 2012) (quoting *Wilkinson v. Austin*, 545 U.S. at 223). The plaintiff does not have a constitutional right to a particular security classification or to be housed in a particular yard. *Meachum v. Fano*, 427 U.S. 215, 224 (1976); *Harbin-Bey v. Rutter*, 420 F.3d 571, 577 (6th Cir. 2005) (increase in security classification does not constitute an atypical and significant hardship "'because a prisoner has no constitutional right to remain incarcerated in a particular prison or to be held in a specific security classification.'" (quoting *Moody v. Daggett*, 429 U.S. 78, 88 n. 9 (1976))). The Supreme Court has held that "the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Wilkinson*, 545 U.S. at 221–22 (citing *Meachum*, 427 U.S. at 225 (no liberty interest arising from Due Process Clause itself in transfer from low-to maximum-security prison because "[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose"). "Changing an inmate's prison classification . . . ordinarily does not deprive him of liberty, because he is not entitled to a particular degree of liberty in prison." *Sawyer*

*v. Jefferies*, 315 Fed. Appx. 31, 34 (10th Cir. 2008) (citing *Templeman v. Gunter*, 16

F.3d 367, 369 (10th Cir. 1994) (citing *Meachum*, 427 U.S. at 225)). The common four

factors considered in determining whether segregation results in such a hardship are:

"whether (1) the segregation relates to and furthers a legitimate penological interest,

such as safety or rehabilitation; (2) the conditions of placement are extreme; (3) the

placement increases the duration of confinement . . . ; and (4) the placement is

indeterminate." *Estate of DiMarco v. Wyo. Dept. of Corrections*, 473 F.3d 1334, 1342

(10th Cir. 2007).

      The plaintiff has not alleged how his LTRH imposed any atypical and

significant hardship in relation to the ordinary incidents of prison life. *Cf. Wilkinson*,

545 U.S. at 223–24 (finding atypical and significant hardship in assignment to

supermax facility where all human contact prohibited, conversation not permitted,

lights on 24-hours-a-day, exercise allowed for only one hour per day in small indoor

room, indefinite placement with annual review, and disqualification of otherwise

eligible inmate for parole consideration). The plaintiff has no constitutional right to

dictate where he is housed, whether by facility or classification. *See Schell v. Evans*,

550 Fed Appx. 553, 557 (10th Cir. 2013) (citing *Meachum*, 427 U.S. at 228–29; *Cardoso*

*v. Calbone*, 490 F.3d 1194, 1197– 98 (10th Cir. 2007). Prison officials are entitled to

great deference in the internal operation and administration of the facility. *See Bell*

*v. Wolfish*, 441 U.S. 520, 547–48 (1979). "Only when a prison administrator's actions

are taken in bad faith and for no legitimate purpose are they not insulated from our

review." *Silverstein v. Fed. Bureau of Prisons*, 559 Fed. Appx. 739, 754-55 (10th Cir.

2014) (citing *see Whitley v. Albers*, 475 U.S. 312, 322 (1986)). Despite the court's

show cause order, the plaintiff's amended complaint fails to allege facts showing his administrative segregation conditions to be extreme or his placement in segregation to have increased the duration of his confinement. The plaintiff's due process claim for his placement and retention in LTRH is dismissed for failure to state a claim for relief.

For all the reasons stated above, the plaintiff's amended complaint is subject to dismissal under 28 U.S.C. §§ 1915A(b) for failure to state a claim upon which relief may be granted.

IT IS THEREFORE ORDERED that the plaintiff's amended complaint is dismissed with prejudice for failure to state a claim upon which relief can be granted.

Dated this 3rd day of December, 2021, Topeka, Kansas.


s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge